Good morning, Your Honor, and may it please the Court, my name is John Latrelle, I represent the petitioner, Tommy Naylor, in this case. The essence of this claim is that Mr. Naylor's waiver of his counsel was not competent, but the issue I want to focus on today and what I focused on in my briefs is that there was substantial evidence that arose during the course of his trial that should have at least triggered a competency hearing and that the judge actually had a sua sponte duty to hold such a hearing. The fact that he threw a fit? I think that the facts... The judge thought this was faked. That's correct, Your Honor. I think that that... And then the next day he sticks his hand in his ears and goes nya-nya-nya-nya-nya. Those are certainly part of the facts which the trial judge had in front of him and would have considered. The day before that... So can we say that the State judge was drunk or crazy in finding that he was faking it? I think that the State judge... I think that the essence of why... Can we say that? I don't think that would be fair to say that. I think it's perfectly reasonable, particularly given that once he became clear that he wasn't going to get out of it, he conducted himself perfectly fine and did a perfectly good job defending himself, lost, but there are many people who lose even with excellent lawyers on their side, so... I think that those facts may have cut against the possibility that he was actually incompetent, but they wouldn't suffice to overshadow the facts that would suggest that he was incompetent. As Your Honor pointed out, that he had a seizure which the judge believed was faked, but the day before the seizure happened, Mr. Naylor confronted the judge and told him that he didn't feel like he was psychiatrically capable of representing himself. He had a seizure, but, I mean, even assuming it wasn't fake, so what? Lots of people have epileptic seizures and are perfectly fine in between. I think that that may, in fact, be correct, and I'm not certain that the seizure all by itself would raise a bona fide doubt as to his competence, but when combined with the other facts that were presented in front of the court, for example, Mr. Naylor told the judge that he was taking Dilantin, an anti-epileptic medication, and he was also taking Zoloft, and I believe another antidepressant. He also told the judge that he had been previously diagnosed by a Federal judge as being incompetent, which was, in fact, true. I think that perhaps the most important fact in front of the trial judge, however, was the fact that Mr. Naylor wasn't getting the medications that he needed to control his symptoms. And so when the trial judge did actually make a determination that he believed the seizure was faked, I would submit that that determination was unreasonable in light of the facts that was presented. For example, the fact that he was taking Dilantin. Similarly, the trial judge's determination that Mr. Naylor was just trying to delay his trial, I think is also not supported by the record, given the fact that Mr. Naylor had put him on notice that he was suffering from a psychiatric condition, including schizophrenia and a delusional disorder of some sort. Counsel, did the hospital to which the defendant was taken give any report regarding the nature of the seizure? I believe, and I don't think this is part of the record, except for the judge announced that the physicians couldn't find any evidence that a seizure had occurred. Now, that also points to the conclusion that perhaps the seizure was faked. But even assuming the seizure was faked, I think that that would actually support the idea that perhaps his delusional disorder was what was preventing him from fully rationally and having a rational and factual understanding of the trial. The discussion so far has focused on the facts that were in front of the trial judge that should have raised a bona fide doubt. But I think that separate and apart from what I believe was an unreasonable determination of fact, the trial judge actually made a legal error in applying a wrong and heightened standard to determine whether a hearing should have been held. We know from Godinez v. Moran that the standard to determine competence to waive counsel is the same as the standard that applies to determine a defendant's competence to stand trial. And we know that where there is bona fide doubt that arises during trial, the cast doubt on competence, a hearing is required. The case that actually establishes that rule is Pate v. Robinson. And in that case, there was no psychiatric testimony to suggest that the defendant was incompetent. The judge ruled solely based on the clinical history which was presented in the defendant's behavior at trial that he didn't believe that a hearing was in fact warranted. Now, in affirming the trial court, the California Court of Appeals cited State cases, People v. Pennington and People v. Welch. And those cases establish that under California's standard, a defendant is actually required to put evidence on the record under oath by a physician testifying that the defendant is not competent to stand trial or in this case to waive counsel. But that just simply can't be the standard for determining whether hearings should be held on that issue. The reason being is that it can't be — a person can't be required to put evidence on the record under oath by a physician when that's precisely the right that is vindicated by a hearing on the issue. We also know that that's not required under the statute. But you have to have something that triggers the hearing. The fact that the guy throws a fit in the courtroom can't alone be enough to trigger a hearing. I mean, you know, if you were to do this right now, well, I mean, you know, let's say it was a demonstration. I mean, that wouldn't trigger it, right? I would agree with you on that. And if the judge looks at it and says, look, this is not a real seizure. This was not a real — this was a guy faking. And, you know, I've checked with a hospital. The hospital can't find evidence of seizure. The guy looked to me like he sort of threw himself down in this position that didn't look like a seizure. It looked like somebody sort of threw himself down and faking it. That doesn't trigger a hearing. That doesn't say, okay, stop, stop everything. We're not going to bring psychiatrists. We're going to send them out for six months of observation and reports and counter-reports. I mean, be serious. You can't have a defendant simply by acting weird in the courtroom impose this kind of burden on the court. When the judge is sitting there and says, look, I look at it, and the guy is faking. There's no evidence here of — I mean, there's nothing to the contrary. The problem with that, with looking at the case that way, is that that's precisely what the trial judge did in Torres v. Prunty, and that was a case decided in this court not long ago. And in that case, the defendant had actually been diagnosed as copping by a psychiatrist, but the psychiatrist noted he was delusional. Now, the trial judge didn't find that that was enough to hold a hearing. But when, during the course of trial, the defendant actually — the defendant's attorney brought to light the fact that the defendant had believed that his own attorney and the judge were in a conspiracy against him, at that point the trial judge held that he thought that the defendant was simply behaving — being ornery and misbehaving in order to delay his trial. Well, he comes in wearing a dress. I don't know that that would render him incompetent. Well, he says, look at this here. You know, here's his day where he's about to go in front of a jury when that's going to decide what's going to happen in the next 15 years of his life. He comes in wearing a dress. I mean, that's crazy. I mean, from there, somebody might say that. Your Honor, that might be crazy, but that wouldn't necessarily suggest that he doesn't have a rational and factual ability to understand the proceedings. On the other hand, where someone is delusional, that suggests that they're not appreciating the factual proceedings around him. And what was there here to show that he's delusional, even if we believe everything? He brought to the judge's attention the fact that he had been diagnosed as schizophrenic. And when, in fact, he — and that he was prescribed with medication to control his symptoms. Now, when he had his seizure, even assuming that this — And he told the judge he wasn't getting his medication? He told the judge he wasn't getting his medication, and the judge confirmed that fact. And it is pretty clear, and I believe it's undisputed, that he wasn't getting the medication. He was getting one dose of the three doses of medication he needed to control his symptoms. And the problem with making essentially what amounted to a credibility determination is that, first, the determination that he was faking was really a medical determination, that he was actually malingering and faking a mental illness. And that's the kind of finding that's precisely what a hearing is required for. The judge, I believe, relied on his own anecdotal experience of what he believed a seizure should look like. And whether or not the judge might have been right in this case, the evidence — Well, but you're sort of skipping the step of what triggers that kind of inquiry. It just doesn't have to do with everybody in the courtroom. Something has to happen.  Something has to happen to trigger the inquiry. If the guy just sits there and acts normal and there's no duty then, right? There has to be something that triggers. What you say triggers it here is he throws himself down and has a fit. And the judge says, I've seen epileptophants before. This doesn't look to me like any epileptophant. I don't think this is a real turning event. I think this is a guy acting weird because he saw the jury walking in and he's going to fake it. I would acknowledge that, Your Honor. And what I'd like to do is answer your question, but yet still reserve the remainder of my time for rebuttal. All 16 seconds, you got. In answer to your question. 12. In answer to your question, Your Honor, I believe the combination of facts which should have triggered a hearing were the fact that Mr. Naylor had been diagnosed as schizophrenic and having a delusional disorder, that he had been prescribed this medication to control that disorder, that he wasn't getting that medication, and that later behavior during trial, including the epileptic seizure, but also including his behavior in making tirades and ranting during the court, it corroborates the evidence that he brought to the court's attention before. So there is case law for the proposition. Maybe not. Simply saying that you're incompetent is not enough, and simply behaving in a way that appears incompetent is not always enough. It's based on facts. But the combination of the two factors. You can reserve the remaining minus 34 seconds. Thank you, Your Honor. Mr. Nicolau, we can't keep you away. Yes, Your Honor. It's always a pleasure. May it please the Court. I think we have, in this case, a situation where a defendant who appears totally rational and totally able to deal with the courtroom situation demonstrates a rational and factual understanding of the case. What about those missing meds? The judge is told that he, the prisoner, is on the medication. Yes. And because he's in court, he's not getting all of his meds. He's getting only one dose instead of three doses. Yes. And doesn't the judge need to do something about that? Well, I think the judge did fax an order over to the jail to see whether or not the defendant could get further medication, because there was an inability, I guess, through the ballot to supply him with medication in court. I don't know what the upshot of that was. It might very well have been that he continued to get simply his morning dosage of meds before he arrived in court. If that's true, is that a problem? No, I don't think it is, Your Honor. Why not? Because there really still, there still, there are so many explanations for why somebody would be on meds that wouldn't have anything really to do with the legal standard of whether or not he has a factual and rational understanding of the nature of the proceedings, and that was always demonstrably true of this defendant all the way through trial. The judge knew that, the judge having determined also that the seizure was faked, that put a new cast on the subsequent behavior that the defendant engaged in. And it was all timed in the judge's finding to coincide with prejudicing the jury, because the seizure, alleged seizure, occurred precisely as the jury was entering the courtroom. And it also was timed in connection with an ongoing dispute between the defendant and the judge. The defendant had, didn't like his public defender. Waived counsel. Acknowledged that he could proceed to trial without a continuance. But on the day of trial, wanted a continuance, didn't want the old public defender. And I think there was a firm basis for the judge to conclude, in light of the faked nature of the seizure, in light of the timing of the seizure, and in light of the dispute that was going on, that this was just an effort by the defendant to force a new defense lawyer into the case that he wasn't otherwise entitled to. And as soon as it became apparent that that tactic was not going to succeed, the rest of the trial proceeded uneventfully, with the defendant again demonstrating his complete rational understanding of the nature of the proceedings. By cross-examining witnesses. By having the victim demonstrate how the crime might have occurred and might not have occurred. By making a closing argument. And when this comes, I think, to this Court, cloaked in the reasonableness standard of the ADPA, and the U.S. Supreme Court tells us in Alvarado, in the Alvarado case, Yarborough v. Alvarado, that when you have a standard that's general, that's designed to evaluate disparate and myriad facts, that there's more latitude given to the State courts in determining whether or not a State ruling violates the standards under 2254d. Here you have that standard. The State courts applied the proper standard. My opponents suggest that on the State appeal, the State appeal required a showing of psychiatric, of a formal psychiatric medical opinion. I don't think that's so. If you read the State court of appeal opinion, the Court will see that the State court of appeal applied alternative standards, including one that tested whether or not the judge should have ordered a hearing, even though there was less than substantial evidence of incompetence, and the Court also found. And what point in the trial was his last aberrational, or whatever you want to call it, however you want to describe it. What was his last strange or unusual behavior? You said the rest of the trial went perfectly right. I'm wondering what point that started. Well, I think the, if my recollection is correct, I think the bizarre behavior, the humming, the yelling, the falling down. That's what I'm referring to. I think, I think that stopped once the, once the, I think the jury selection continued and once the trial started. I don't think there was anything more of that, other than I believe the defendant continued to complain and to allege that, you know, the system and the judge and the defense lawyers and the prosecutors were stacked against him. But he got his mitts back. Well, if he got his mitts back. The judge did send the facts. Excuse me, Your Honor? The judge did send the facts. He did send the facts, yes. That's true, Your Honor. And that might have been an explanation. Okay. Thank you. Oh, thank you. You have a minute. We'll give you a minute for rebuttal. Thank you, Your Honor. I just wanted to make a few points that I heard during argument. Five minutes. First, the Respondent points out that there are several, there are many reasons why Mr. Inouye might have been receiving medication. And that's, I wanted to point out that that's precisely why a hearing should have been held on the issue. Perhaps this medication didn't really affect his confidence, but we just don't know on this record. My opponent also pointed out that Mr. Naylor acted rationally during portions of his trial, and I wouldn't dispute that. But the fact that a defendant acts rationally during portions of the trial doesn't actually impact whether a trial judge has to have a hearing, where there's conflicting evidence on the issue. And I think this Court's cases are clear. A hearing still has to be held. A final point is that it's enough that Mr. Naylor appeared incompetent at any point during his trial. For example, on the fourth day of his trial, he was actually behaving so erratically that he was thrown out of the court and wasn't present during voir dire. Now, that clearly would impact one's ability to rationally and factually understand the proceedings against you and assist in your defense. How do you fit in with the AEDPA standard? Is this an unreasonable application of Supreme Court law? Is it a contrary to Supreme Court law? Is it an unreasonable determination of fact? Or what? I think this case can be looked at two ways. I think that in applying a heightened and incorrect legal standard to determine whether a hearing should have been held in the court of appeal, the court of appeal actually was acted contrary to Supreme Court precedent in that the precedent I'm referring to is Pate v. Godinez, or Pate v. Robinson as interpreted through Godinez v. Moran. I think that was contrary to that case. I think also, and this is best illustrated in Torres v. Prunty, in failing to find that there was substantial evidence triggering a hearing, the State court made an unreasonable determination of facts in light of the evidence. Thank you. Thank you, Your Honor. I'm sorry. It was 10 minutes. We'll next hear argument in Mora v. Mathew. Thank you.
judges: Canby, Kozinski, Rawlinson